VINCENT J. ROSSIGNOL *v.* DANBURY SCHOOL OF AERONAUTICS, INC., ET AL.

KING, C. J., ALCORN, HOUSE, COTTER and RYAN, JS.

Argued December 13, 1966—decided February 28, 1967

*Paul W. Orth,* with whom, on the brief, was *Peter B. Sullivan,* for the appellant (plaintiff).

*John Crosskey,* for the appellee (defendant Piper Aircraft Corporation).

*Thomas J. Hagarty,* for the appellees (defendant Avco Corporation et al.).

House, J. The facts giving rise to this action, as admitted by demurrer, may be briefly summarized. The defendant Eaton Manufacturing Company sold an exhaust valve to the defendant Avco Corporation. Avco incorporated this exhaust valve into a motor which it manufactured and sold to the defendant Piper Aircraft Corporation. Piper incorporated this motor into an airplane which it manufactured and sold to the defendant the Danbury School of Aeronautics, Inc. Danbury School sold the airplane to a customer, who, after using the airplane, resold it to Danbury School, which subsequently sold it to the plaintiff in May, 1963. In August, 1963, the airplane was damaged in a crash landing due to

engine failure, which, in turn, was "due to a cracked or defective exhaust valve in Number 3 cylinder probably caused by excessive valve guide wear." At the time of the accident, the engine had been operated for 687 hours. Normal overhaul time for such an engine is 800 to 1200 hours.

The plaintiff in a four-count complaint has sued all of the above-mentioned parties except the first purchaser from the Danbury School. The school answered on the merits and is not involved in this appeal. The remaining defendants, Piper, Avco and Eaton, were each the object of an individual count. As to each of these three defendants, there was set up in a single count three causes of action sounding in (1) warranty, express "and/or" implied, (2) negligence and (3) "tortious conduct . . . in manufacturing and selling a product containing a defect, or likely to develop a defect, which made or would make such product unreasonably dangerous for those purposes for which it would reasonably be used." This manner of pleading is a permitted practice; *Veits* v. *Hartford,* 134 Conn. 428, 58 A.2d 389; but a hazardous and complicating one in a case already complicated by the joinder of multiple defendants.

From this point on, the case developed into a gordian knot of procedural difficulties owing to a failure of the parties to observe elemental rules of pleading and practice. It is a knot which we can neither entirely untie nor cut without prejudice to one or the other of the parties.

Piper, Eaton and Avco each filed demurrers which were sustained. Piper's amended demurrer was addressed to the entire second count directed against it. As we have noted, the count purported to set out three causes of action, one of which

sounded in negligence. The demurrer did not reach the negligence aspects of the count, and accordingly, even if the demurrer was good as to the other allegations, since it was addressed to the entire count, it should not have been sustained. Practice Book § 106; *McNish* v. *American Brass Co.,* 139 Conn. 44, 54, 89 A.2d 566, cert. denied, 344 U.S. 913, 73 S. Ct. 336, 97 L. Ed. 704; *Cashman* v. *Meriden Hospital,* 117 Conn. 585, 586, 169 A. 915; *Folwell* v. *Howell,* 117 Conn. 565, 568, 169 A. 199; *Blakeslee* v. *Water Commissioners,* 106 Conn. 642, 649, 139 A. 106; *Goldfarb* v. *Cohen,* 92 Conn. 277, 281, 102 A. 649; see Practice Book Form 258 (third form).

The joint demurrer of Eaton and Avco to the respective counts directed against them was limited to the purported causes of action other than that sounding in negligence. The sustaining of this demurrer would, therefore, under normal circumstances, present on appeal only the specific question as to whether the counts stated causes of action for express "and/or" implied warranty and for manufacturing and selling a defective and dangerous product.

The judgment as printed in the record and a reference in the plaintiff's brief, however, have prompted us to examine the file in this case. It discloses that the court's memorandum of decision sustaining the demurrers was filed on June 16, 1965. On July 28, 1965, the plaintiff filed a motion for permission to amend his complaint, and this motion was granted on September 10, 1965, the amendment being docketed as filed on that day. This pleading amended each of the counts as to which, in whole or in part, a demurrer had been sustained by removing the cause of action based on negligence

and, as to each defendant, made that cause of action a separate additional count of the complaint. "When a demurrer to the whole or a portion of a pleading which purports to state an entire cause of action is sustained, the sustaining of the demurrer removes from the case the cause of action demurred to. Practice Book [1951] § 98 [now Practice Book, 1963, § 112]. 'Whenever, after a demurrer sustained, the complaint or pleading demurred to is amended or a substitute filed, that demurrer and the pleading to which it relates are taken out of the case. The filing of the amendment or substitution, as the case may be, is a withdrawal of the first.' *Eames* v. *Mayo,* 93 Conn. 479, 489, 106 A. 825; Maltbie, Conn. App. Proc., § 48." *Grady* v. *Kennedy,* 145 Conn. 579, 584, 145 A.2d 124; *Pope* v. *Watertown,* 136 Conn. 437, 438, 72 A.2d 235; *Antman* v. *Connecticut Light & Power Co.,* 117 Conn. 230, 234, 167 A. 715; *Lakitsch* v. *Brand,* 99 Conn. 388, 389, 121 A. 865; *Allen* v. *Chase,* 81 Conn. 474, 475, 71 A. 367; *Pettus* v. *Gault,* 81 Conn. 415, 418, 71 A. 509; *Arnold* v. *Kutinsky,* 80 Conn. 549, 552, 69 A. 350; *Mitchell* v. *Smith,* 74 Conn. 125, 128, 49 A. 909; *Boland* v. *O'Neil,* 72 Conn. 217, 220, 44 A. 15; *Goodrich* v. *Stanton,* 71 Conn. 418, 424, 42 A. 74. Hence, the effect of the plaintiff's amendment to the count against Piper, which had been demurred to in its entirety, operated as a removal or withdrawal of that count, and accordingly the ruling on the demurrer addressed to that entire count cannot be made the subject of an appeal. *Antman* v. *Connecticut Light & Power Co.,* supra. On the other hand, the amendment to the counts directed against Eaton and Avco did not amend them with respect to the only two causes of action set forth therein to which the demurrer of those defendants was addressed. Accordingly, the

rulings on those demurrers remained properly the subject of appeal.

On September 20, 1965, ten days after amending his complaint, the plaintiff, presumably acting pursuant to the authority of such cases as *Vincent* v. *McNamara,* 70 Conn. 332, 340, 39 A. 444, moved "that judgment be entered against him on each of the following Counts of the Complaint as amended: (a) on the Second Count in favor of Piper Aircraft Corporation; (b) on the Third Count in favor of Avco Corporation, (c) on the Fourth Count in favor of Eaton Manufacturing Company." The file shows that the plaintiff's motion was granted on October 8, but it does not disclose that any judgment has been rendered on the complaint as amended, despite the granting of the motion. On September 20, Eaton and Avco jointly moved for judgment in their favor "by reason of the Court's sustaining of their demurrers to the plaintiff's complaint by memorandum dated June 14, 1965." On September 22, 1965, Piper filed a similar motion for judgment. The record shows that both of these motions for judgment on the original unamended complaint were granted on October 8, almost a month after the complaint had been amended and on the same day on which the court granted the plaintiff's motion for judgment on the complaint as amended. As rendered, the judgment recites that motions for judgment were filed by each of the three defendants and concludes "that that complaint is insufficient."

It is from this judgment, based on the sustaining of the demurrers to the unamended complaint, that the plaintiff has appealed, claiming that the court erred in sustaining the demurrers to the second, third and fourth counts. Since counsel did

not act upon this court's suggestion, made at the commencement of argument, that some effort be made to rectify or clarify the record, we must take the appeal as it has been presented.

We have already noted, since Piper's demurrer was addressed to the entire second count but did not reach the cause of action in negligence asserted in that count, it was error to sustain that demurrer. The plaintiff's subsequent amendment of that count after the demurrer to it was sustained, however, operated as a withdrawal of that count, and the ruling on the demurrer addressed to that count cannot be made the subject of an appeal. *Antman* v. *Connecticut Light & Power Co.,* 117 Conn. 230, 234, 167 A. 715. Accordingly, the present appeal so far as it pertains to the judgment rendered on demurrer sustained in favor of Piper must be dismissed.

The demurrer of Avco and Eaton was not addressed to the entire unamended third and fourth counts but, as permitted by Practice Book § 106, only to two of the three causes of action set out in each count. Therefore the judgment as rendered was erroneous in declaring that, as to them, the entire complaint was insufficient. The causes of action sounding in negligence were not attacked by their demurrer, and no claim has been raised that the complaint does not allege as to each of them a good cause of action in negligence. Determination of the merits of those causes of action is still pending.

There remains for decision, therefore, the ruling of the trial court sustaining the demurrer of Avco and Eaton as to the causes of action other than negligence set out in the counts severally addressed against them. On his appeal, the plaintiff has not briefed the assignment of error directed to the rul-

ing on the demurrer so far as it held that the complaint failed to set out a good cause of action for breach of warranty, express or implied. Accordingly, this assignment of error is considered abandoned. *William Peck Lumber Co.* v. *Virmides, Inc.,* 153 Conn. 710, 712, 215 A.2d 912; *Cleary* v. *Zoning Board,* 153 Conn. 513, 518, 218 A.2d 523; *Monahan* v. *Montgomery,* 153 Conn. 386, 389, 216 A.2d 824; Maltbie, Conn. App. Proc. § 327.

There remains for consideration only the plaintiff's claim that the allegations of each of the counts directed against Avco and Eaton set forth, respectively, good causes of action based on principles of strict tort liability and that, accordingly, the trial court erred in sustaining the demurrer to the portions of the counts purporting to set out such a cause of action.

In testing the allegations against attack by demurrer, we must construe the complaint in the manner most favorable to the pleader. *Oppenheimer* v. *Connecticut Light & Power Co.,* 149 Conn. 99, 102, 176 A.2d 63. The demurrer admits facts well pleaded although it does not admit legal conclusions. *McAdam* v. *Sheldon,* 153 Conn. 278, 280, 282, 216 A.2d 193; *Cyr* v. *Brookfield,* 153 Conn. 261, 263, 216 A.2d 198. The basic question presented therefore is whether the complaint alleges facts sufficient to set forth a good cause of action against Avco and Eaton sounding in strict tort liability as such a separate and distinct basis of legal liability is now recognized to exist. It is not sufficient that a complaint refer to a basis of liability by some distinctive name. *Anderson* v. *Colwell,* 93 Conn. 61, 65, 104 A. 242; see *Kinderavich* v. *Palmer,* 127 Conn. 85, 100, 15 A.2d 83. The burden rests on the plaintiff to allege a recognizable cause of action. *Lom-*

*bardi* v. *J. A. Bergren Dairy Farms, Inc.*, 153 Conn. 19, 22, 213 A.2d 449; *Stavnezer* v. *Sage-Allen & Co.*, 146 Conn. 460, 461, 152 A.2d 312. "Such a requirement has its basis in two principles inherent in our procedure: The first is that in any action the complainant is required to set forth facts upon the basis of which, if true, he may be able to establish in law a right to relief, for, unless that is done, the pleading is demurrable; *Waterbury* v. *Connecticut Ry. & Lighting Co.*, 86 Conn. 180, 188, 84 A. 723; and the second requirement is that a pleading must fairly apprise the court and the adverse party of the claims to be made. *Volpe* v. *Gunder*, 129 Conn. 14, 17, 26 A.2d 13." *Zamatha* v. *Harak*, 134 Conn. 480, 483, 58 A.2d 704.

We are, for the first time, presented on this appeal with the question what are the minimum essential allegations of a cause of action based on the theory of strict tort liability of a manufacturer or a seller of a product to an ultimate user or consumer. We have had occasion to consider various aspects of the developing law regarding products liability and recognition of strict tort liability as distinguished from liability predicated on contract or simple negligence. See *Garthwait* v. *Burgio*, 153 Conn. 284, 216 A.2d 189; *Corneliuson* v. *Arthur Drug Stores, Inc.*, 153 Conn. 134, 214 A.2d 676; *Hamon* v. *Digliani*, 148 Conn. 710, 174 A.2d 294; *Crotty* v. *Shartenberg's-New Haven, Inc.*, 147 Conn. 460, 162 A.2d 513. Each of these cases was brought on a theory of liability based on principles of warranty and misrepresentation, with alleged reliance by the plaintiff on such representations. It was held that an allegation of privity between the parties was not necessary, and we also recognized the existence of a right of action sounding in tort

and based "on the public policy of protecting an innocent buyer from harm rather than on the ensuring of any contractual rights." *Hamon* v. *Digliani, supra,* 716. In the *Garthwait* case we stated (p. 289): "We find ourselves in accord with the rule recently adopted in § 402 A of volume 2 of the Restatement (Second) of Torts: 'Special Liability of Seller of Product for Physical Harm to User or Consumer (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if (a) the seller is engaged in the business of selling such a product, and (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold. (2) The rule stated in Subsection (1) applies although (a) the seller has exercised all possible care in the preparation and sale of his product, and (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.'" We also noted (p. 290) that comment 1 to this section of the Restatement points out that "[t]he liability stated is one in tort, and does not require any contractual relation, or privity of contract, between the plaintiff and the defendant." Since it was not relevant to the issues raised in the *Garthwait* case, we had no occasion to refer to the further comment in the Restatement: "The rule stated in this Section does not require any reliance on the part of the consumer upon the reputation, skill, or judgment of the seller who is to be held liable, nor any representation or undertaking on the part of that seller. The seller is strictly liable although, as is frequently the case, the consumer

does not even know who he is at the time of consumption. The rule stated in this Section is not governed by the provisions of the Uniform Sales Act, or those of the Uniform Commercial Code, as to warranties; and it is not affected by limitations on the scope and content of warranties, or by limitation to 'buyer' and 'seller' in those statutes. Nor is the consumer required to give notice to the seller of his injury within a reasonable time after it occurs, as is provided by the Uniform Act. The consumer's cause of action does not depend upon the validity of his contract with the person from whom he acquires the product, and it is not affected by any disclaimer or other agreement, whether it be between the seller and his immediate buyer, or attached to and accompanying the product into the consumer's hands. In short, 'warranty' must be given a new and different meaning if it is used in connection with this Section. It is much simpler to regard the liability here stated as merely one of strict liability in tort." Restatement (Second), 2 Torts § 402 A, comment m.

In accepting the principles adopted by the American Law Institute as contained in the Restatement (Second) of Torts, we find ourselves in accord with the great majority of jurisdictions which have recently considered the problems arising out of products liability litigation. In our opinion in *Garthwait* v. *Burgio,* supra, 287, we noted the multitude of cases and voluminous legal literature on the topic since the landmark case of *Henningsen* v. *Bloomfield Motors, Inc.,* 32 N.J. 358, 161 A.2d 69. To these cases should be added the cases cited in the Appendix to § 402 A of the Restatement (Second) of Torts, in the Cumulative Supplement to 1 Frumer & Friedman, Products Liability, and

in the Commerce Clearing House Products Liability Reporter. We particularly note the continuing study and analysis of Professor William L. Prosser, the reporter for the Restatement (Second) of Torts, entitled "The Fall of the Citadel (Strict Liability to the Consumer)," 50 Minn. L. Rev. 791, aptly subtitled as a continuation of the study of the law of products liability in which "the author details the recent explosion in the field." See Prosser, "The Assault upon the Citadel (Strict Liability to the Consumer)," 69 Yale L.J. 1099; see also Freedman, " 'Defect' in the Product: the Necessary Basis for Products Liability in Tort and in Warranty," 33 Tenn. L. Rev. 323; comment, "Products Liability in Connecticut—A Survey," 40 Conn. B.J. 155 (an exhaustive survey by members of the University of Connecticut Law Review).

In testing the plaintiff's complaint on this demurrer, we are not concerned with any question of actual proof as distinguished from both the possibility of proof under the allegations and what allegations are necessary to set out a cause of action. We have already noted that, negatively, it is unnecessary, in stating a case against a seller for strict tort product liability, to allege or prove privity of contract between the parties, or any reliance on the part of the plaintiff as a user or consumer on the reputation, skill or judgment of the seller, or any representation or undertaking on the part of that seller, or compliance with the provisions of the Uniform Commercial Code. General Statutes, tit. 42a. This does not mean, however, that there are no essential affirmative allegations or that the seller's liability is absolute. Several conditions precedent to a seller's liability are noted in § 402 A of the Restatement (Second) of Torts,

and a plaintiff must at least allege and prove facts bringing himself within the requirements of that section. These include not only allegations that the defendant sold the product, that it was in a defective condition unreasonably dangerous to the user or consumer or to his property, that it caused physical harm to the consumer or user or to his property (see *Corneliuson* v. *Arthur Drug Stores, Inc.,* 153 Conn. 134, 214 A.2d 676; Restatement [Second], 2 Torts § 402 A, comment i), and that the seller was engaged in the business of selling such a product but also that the product was expected to and did reach the user or consumer without substantial change in the condition in which it was sold. See Restatement (Second), 2 Torts § 402 A and comments g, p, q; Freedman, op cit., 33 Tenn. L. Rev. 323, 327. This latter essential allegation may well be of great significance in such circumstances as those which gave rise to the instant case where the product passed through several hands and eventually came into the possession of the plaintiff as part of a used, secondhand machine. "It is common knowledge that materials subject to friction will eventually wear out. *Courtois* v. *General Motors Corp.,* 37 N.J. 525, 543 [182 A.2d 545] (1962)." *Jakubowski* v. *Minnesota Mining & Manufacturing,* 42 N.J. 177, 184, 199 A.2d 826.

Since the present complaint contains no allegation that the product of either Avco or Eaton was expected to and did reach the plaintiff without substantial change in the condition in which it was sold by either of them, it lacks an allegation which is essential to the statement of a good cause of action based on strict tort product liability. Accordingly, there was no error in the ruling of the court sustaining the demurrer addressed to the portion of

the complaint which purported to allege such a cause of action.

There is error in the form of the judgment as to the defendants Avco Corporation and Eaton Manufacturing Company, it is set aside and the court is directed to render judgment sustaining the defendants' demurrer to the third and fourth counts of the complaint only so far as those counts purport to allege a cause or causes of action based on liability other than on grounds of negligence; the appeal from the judgment rendered for the defendant Piper Aircraft Corporation is dismissed.

In this opinion the other judges concurred.